**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carrie Lara, | No. CV-13-01643-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Carrie Lara seeks review of the Social Security Administration Commissioner's decision denying her application for disability benefits under Title II of the Social Security Act. (Doc. 1; Doc. 16.) For the reasons below, the Court will vacate the Commissioner's decision and remand this matter for further proceedings.[1]

**I.  Background**

On March 28, 2010, Plaintiff filed a Title II application for disability insurance benefits, alleging an onset date of February 1, 2010. (AR[2] 168-74.) Plaintiff's application was denied on September 16, 2010, and denied upon reconsideration on January 4, 2011. (*Id.* at 103-13.)

Pursuant to Plaintiff's request, a hearing was held on April 26, 2012, before Administrative Law Judge (ALJ) Joan G. Knight. (*Id.* at 46-73.) In a decision dated June

---

[1] This matter is suitable for resolution based on the briefs. Accordingly, the Court denies Plaintiff's request for oral argument. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] Citations to "AR" are to the administrative record.

8, 2012, the ALJ ruled Plaintiff is not entitled to disability benefits because she is "not disabled under sections 216(i) and 223(d) of the Social Security Act." (*Id.* at 16-25.) On June 13, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (*Id.* at 1-6.)

Having exhausted the administrative review process, on August 12, 2013, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On May 13, 2014, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits or, in the alternative, for further proceedings. (Doc. 16 at 20-21.) On June 12, 2014, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 17.) On July 17, 2014, Plaintiff filed a Reply Brief. (Doc. 20.) On February 12, 2015, Defendant filed a Notice of Supplemental Authority, arguing that the Ninth Circuit Court's decision in *Treichler v. Comm'r of SSA*, 775 F.3d 1090 (9th Cir. 2014), requires the Court to remand for further proceedings, instead of for an award of benefits, should the Court find reversible error. (Doc. 22.)

**II.  Legal Standards**

    **a.  Standard of Review**

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" ["RFC"] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff is not disabled and is not entitled to benefits. (*Id.* at 16-25.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 18.) At step two, the ALJ found that Plaintiff has the following severe impairments: seizure disorder, history of deep vein thrombosis, obesity, borderline intellectual functioning, anxiety disorder, cognitive disorder, and reactive airways disease. (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 18-20.)

At step four, the ALJ found the following:

> [Plaintiff] has the [RFC] to perform work with these restrictions: no climbing of ladders, ropes or scaffolds, frequent climbing of ramps and stairs, stooping, crouching, crawling and kneeling, and occasional balancing, no exposure to hazards such as unprotected heights, dangerous machinery, and driving at work, avoiding even moderate exposure to fumes and pulmonary irritants, and limited to simple, repetitive, unskilled tasks.

(*Id.* at 20.) The ALJ further found that Plaintiff "is capable of performing past relevant work as a cafeteria food service attendant. This work does not require the performance of

work-related activities precluded by" Plaintiff's RFC. (*Id.* at 24.) Given that finding, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act" from the alleged onset date through the date of the ALJ's decision. (*Id.* at 25.)

## III. Analysis

Plaintiff argues that the ALJ's decision is defective for the following reasons: (1) the ALJ erred in failing to specifically address whether Plaintiff's impairments met or equaled the elements of Listing 12.05(B) and (C), and in failing to affirmatively find that Plaintiff's impairments met or equaled the severity requirements of that Listing; (2) the ALJ erred in failing to incorporate all of Plaintiff's limitations in the assessed RFC and the hypothetical the ALJ posed to the vocational expert; (3) the ALJ improperly evaluated Plaintiff's credibility and discounted her testimony; and (4) the ALJ improperly evaluated third-party testimony by Plaintiff's husband. Plaintiff further argues that the Commissioner erred by not considering new evidence submitted to the Appeals Counsel. (Doc. 16 at 4-22.) The Court addresses Plaintiff's arguments below.

### a. Listing 12.05

The Listings describe specific impairments of each of the major body systems that are considered "severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience" and designate "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(a), (c)(3). A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment. To "meet" a listed impairment, a claimant must establish that her condition satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett*, 180 F.3d at 1099. To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings 'at least equal in severity and duration'" to each element of the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. § 404.1526); *see Sullivan*, 493 U.S. at 531. A mere diagnosis is insufficient to meet or equal a listed

impairment; a claimant must establish that he or she "satisfies all of the criteria of that listing . . . ." 20 C.F.R. § 404.1525(c)(3), (d).

As the Appendix explains:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing. Paragraphs A and B contain criteria that describe disorders we consider severe enough to prevent your doing any gainful activity without any additional assessment of functional limitations. For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c), and 416.920(c).

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). Therefore, Plaintiff must show that she meets the diagnostic description of "Intellectual disability,"[3] which "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

Additionally, in order to meet Listing 12.05(B), Plaintiff must have "[a] valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. pt. 404, subpart P, app. 1, 12.05(B). In order to meet Listing 12.05(C), Plaintiff must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpart P, app. 1, 12.05(C).

The ALJ is obligated to consider the relevant evidence to determine whether a claimant's impairment or impairments meet or equal one of the specified impairments set forth in the Listings. *See Lewis*, 236 F.3d at 512; 20 C.F.R. § 416.920(a)(4)(iii). Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's

---

[3] "The 'intellectual disability' impairment listed under § 12.05 was formerly referred to as 'mental retardation.' The substance of the listing has not changed." *Kennedy*, 738 F.3d at 1175 n.1.

impairment does not [meet or equal a Listing]." *Lewis*, 236 F.3d at 512; *see Marcia*, 900 F.2d at 176 (noting that the ALJ's unexplained finding at step three was reversible error). The Ninth Circuit has recognized, however, that the ALJ need not recite the reasons for his or her step three determination so long as the evidence is discussed in the ALJ's decision. *See Lewis*, 236 F.3d at 513. Moreover, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude that an impairment could meet or equal a Listing. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

As of July 1, 2010, Plaintiff fell into the extremely low range of intelligence with a WAIZ-IV FSIQ of 58. (AR 335.) However, as Plaintiff's attorney conceded at the hearing, Plaintiff does not have earlier IQ scores from when she was younger than 22. (*Id.* at 50.) In lieu of such IQ scores, Plaintiff testified that she was in special education in elementary and high school. (*Id.*). At the hearing, Plaintiff specifically requested that the ALJ consider whether Plaintiff meets or equals Listings 12.05 or 12.06 based on the record evidence. (*Id.* at 50.)

The ALJ found that Plaintiff did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 18.) The ALJ specifically addressed the criteria for Listings 3.02(A), (B), and (C) (chronic pulmonary insufficiency), 3.03 (asthma), 7.08 (coagulation defects), 11.02 and 11.03 (convulsive and non-convulsive epilepsy), and 12.02, 12.04, and 12.06 (organic mental disorders, affective disorders, and anxiety-related disorders). The ALJ did not specifically discuss whether Plaintiff met or equaled Listing 12.05. (*Id.* at 18-20.)

The Court first finds that the ALJ erred in not addressing the evidence related to whether Plaintiff met or equaled Listing 12.05(b) or (C). Plaintiff presented evidence that her IQ is 58, she attended special education courses throughout her schooling, and she has some limitations in her adaptive functioning. (*Id.* at 50, 336.) This evidence was sufficient to require the ALJ to make a finding. *See Gomez v. Astrue*, 695 F. Supp. 2d

1049, 1057 (C.D. Cal. 2010) ("the ALJ cannot disregard a valid IQ simply because other evidence in the record could support a finding of nondisability in the absence of such a score."). Although the ALJ referenced Listing 12.00, and analyzed whether Plaintiff met Listings 12.02, 12.04, or 12.06, as detailed above, 12.05 is structurally different than the other mental impairment Listings. Accordingly, the ALJ erred in not specifically discussing the elements of Listing 12.05 and the evidence in the record relating to those elements. The Court cannot say that this error is harmless. *See Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error is harmless when it is "irrelevant to the ALJ's ultimate disability conclusion.").

Nor is the ALJ's discussion of record evidence in other parts of her decision sufficient. First, unlike the ALJ in *Lewis*, the ALJ here entirely failed to address Plaintiff's IQ scores or the other record evidence regarding Plaintiff's intellectual functioning, including her previous special education. *Lewis*, 236 F.3d at 514 ("The ALJ noted that Lewis had a full scale IQ of 78, and a performance IQ of 81. These scores were well above the maximum IQ of 70 allowed by the listing. This alone, apart from the ALJ's discussion of Lewis's practical capabilities, sufficed to explain his conclusion."). While the ALJ here notes in a later part of her decision that "[u]pon testing, [Plaintiff] scored in the extremely low range of intelligence, and her verbal comprehension skills were in the extremely low range," the ALJ did not discuss Plaintiff's IQ scores or otherwise address the evidence and make a finding regarding whether Plaintiff met or equaled Listing 12.05. (AR 22.)

Defendant does not dispute that Plaintiff's IQ score meets the Listing requirements of 12.05(B) and (C), or that Plaintiff suffers from a "physical or other mental impairment imposing an additional and significant work-related limitation of function," as required to meet Listing 12.05(C). (Doc. 17 at 8-11.) Instead, Defendant argues that Plaintiff does not meet the initial definition of "intellectual disability" because (1) no physician has diagnosed Plaintiff with "mental retardation"; (2) the record does not support Plaintiff's claim that she demonstrated the required deficits in adaptive functioning, citing to the

ALJ's findings that Plaintiff can perform a wide range of daily activities, the fact that Plaintiff was able to work for 17 years with the same mental impairments she now asserts render her disabled, and the fact that Plaintiff quit her job because she had seizures, not because the mental demands of the job exceeded her abilities; and (3) two state agency physicians reviewed the record and opined that Plaintiff does not meet or equal any listing.  (Doc. 17 at 9.)

First, Defendant's argument that Plaintiff does not meet Listing 12.05 because Plaintiff has not been diagnosed as mentally retarded is without merit.  Listing 12.05 "does not require a diagnosis or finding of 'mental retardation,' but relies instead of valid IQs in conjunction with other evidence to establish subaverage general intellectual functioning."  *Gomez*, 695 F. Supp. 2d at 1057-58 (citing SSR 83-19, 1983 SSR LEXIS 24).  Defendant fails to cite to any authority that an absence of a mental retardation diagnosis is sufficient to find Plaintiff does not meet Listing 12.05.

Second, Plaintiff presented evidence that: (1) medical testing shows an IQ score of only 58; (2) she was in special education throughout her school years, showing that her low intellectual functioning could have manifested prior to age 22; and (3) other evidence of adaptive deficiencies.  (*Id.* at 50-51, 53-55, 58, 59, 336.)  On the other hand, given the (1) lack of IQ scores prior to Plaintiff being 22; (2) Plaintiff's work history; and (3) Plaintiff's testimony that she quit her cafeteria attendant job due to having seizures, the Court cannot conclude on this record that a finding in Plaintiff's favor on this issue is warranted.  (*Id.* at 50-52, 332); *see Sorter v. Astrue*, 389 Fed. Appx. 620, 621-22 (9th Cir. 2010).  Regardless, the ALJ failed to address any of this evidence as it relates to Listing 12.05 even though Plaintiff raised the issue at the hearing and cited to record evidence that could support a finding in her favor.

Further, contrary to Defendant's claim otherwise, Plaintiff's daily activities and her work history are not necessarily inconsistent with a finding that Plaintiff meets or equals Listing 12.05.  Indeed, some courts have found that daily activities such as reading, driving, and cleaning are not necessarily inconsistent with subaverage

intelligence. *Lewis v. Astrue*, No. C 06-6608 SI, 2008 U.S. Dist. LEXIS 6108, at *20-21 (N.D. Cal. Jan. 22, 2008) ("Claimant's ability to take care of herself and her children, though certainly physically and emotionally demanding, is no indication of the intellectual demands of those activities and is not inconsistent with being mentally retarded."). Further, Plaintiff testified that she received special assistance in her cafeteria worker position. (AR 53-54.)

Finally, the fact that two state agency physicians reviewed the record and opined that Plaintiff does not meet or equal Listing 12.05 is insufficient. Neither of those physicians specifically addressed Listing 12.05, including the definition of intellectual disability, Plaintiff's IQ scores, or Plaintiff's participation in special education during elementary and high school. (AR 81, 94-95.)

### b. The ALJ's Analysis at Step Four

Plaintiff also argues that the ALJ erred at step four of the evaluation process. Specifically, Plaintiff argues that the although the ALJ gave the opinions of Dr. Rabara, Dr. Bliklen, and Dr. Garreton[4] "significant weight," she failed to explain how the acceptance of these physicians' opinions support the disability determination and failed to adequately include the limitations identified by those three physicians in the assessed RFC. (Doc. 16 at 8-9.) Plaintiff further argues that the ALJ erred in failing to include limitations opined by Dr. Rabara, Dr. Bliklen, and Dr. Garreton in the hypothetical the ALJ posed to the vocational expert. (*Id.* at 10.)

### i. The ALJ's Assessed RFC

In determining a claimant's RFC, an ALJ must consider the nature and extent of the claimant's mental limitations and restrictions to determine his or her ability to work

---

[4] Although the ALJ cited to the Exhibit containing Dr. Garreton's opinions in the same sentence that she referenced giving several other opinions "significant weight," the ALJ did not refer to Dr. Garreton by name in her decision. (AR 24.) Regardless, however, Dr. Bliklen and Dr. Garreton opined that Plaintiff had "moderately severe" limitations in her ability to perform similar functions, and the ALJ explicitly gave Dr. Bliklen's opinions significant weight. Further, as detailed below, the Court finds that the ALJ sufficiently incorporated the limitations opined by Dr. Garreton into the assessed RFC. (*Id.* at 361-62, 519-20.)

- 10 -

1 on a regular and continuing basis. 20 C.F.R. § 404.1545(a)(2). "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. § 404.1545(c).

In her decision, the ALJ found that Plaintiff had "moderate difficulties" in concentration, persistence, or pace.[5] In her RFC analysis, the ALJ gave "significant weight" to the opinions of Dr. Rabara, Dr. Bliklen, and Dr. Garreton, as well as state agency reviewing sources. (*Id.* at 24.)

On July 1, 2010, examining physician Dr. Rabara opined that Plaintiff "can remember simple instructions, but will have moderate difficulty remembering detailed instructions and work like procedures." (*Id.* at 336.) Dr. Rabara further opined that Plaintiff "can carry out simple instructions but will have mild to moderate difficulty making simple decisions," Plaintiff "will have moderate difficulty carrying out detailed instructions, sustaining her concentration," and "completing a normal workday at a consistent pace, and Plaintiff "will have moderate to severe difficulty sustaining an ordinary routine without special supervision." (*Id.*) Additionally, Dr. Rabara stated that Plaintiff will have "mild difficulty working with others and performing activities within a schedule." (*Id.*)

With regard to social interaction, Dr. Rabara opined that Plaintiff "can ask simple questions, maintain appropriate hygiene and behavior, and respond appropriately to supervisory criticism." (*Id.*) Finally, with regard to adaptation, Dr. Rabara opined that Plaintiff will have "moderate difficulty responding appropriately to work setting changes," but she "can take appropriate precautions, travel in unfamiliar places, and set realistic goals independently." (*Id.*) Dr. Rabara did not specifically opine on whether Plaintiff can perform "simple, repetitive, unskilled tasks."

---

[5] "Concentration, persistence, or pace" refers to the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R 404, Sub. P, App. 1 § 12.00(C)(3).

- 11 -

On September 28, 2010, Dr. Bliklen completed a Medical Assessment of Ability to Do Work-Related Physical Activities form, in which he stated that Plaintiff has headaches two to three times per week and two or fewer seizures per year. (*Id.* at 361.) Dr. Bliklen also stated that Plaintiff's symptoms on average last for "0-5 minutes." (*Id.*) Dr. Bliklen opined that Plaintiff is totally limited in activities involving unprotected heights, being around moving machinery, and driving automotive equipment. (*Id.*) Further, he stated that Plaintiff has "moderate" restrictions in her exposure to marked changes in temperature/humidity and exposure to dust, fumes, and gases. (*Id.*) Finally, Dr. Bliklen opined that Plaintiff's general degree of restriction is "moderately severe." (*Id.*) The form Dr. Bliklen completed defines "moderate" as "[a]n impairment which affects, but does not preclude ability to function" and "moderately severe" as "[a]n impairment which seriously affects ability to function." (*Id.*)

On March 7, 2012, Dr. Garreton completed the same Medical Assessment of Ability to Do Work-Related Physical Activities form and stated that Plaintiff has panic attacks twice a week, lasting between "0-5 minutes." (*Id.* at 519.) Dr. Garreton further opined that Plaintiff is totally restricted in activities involving unprotected heights, being around moving machinery, and driving automotive equipment. (*Id.* at 520.) Finally, Dr. Garreton opined that Plaintiff's degree of restriction is "moderately severe." (*Id.*)

On July 26, 2010, state agency physician Dr. Downs opined that Plaintiff is moderately limited in carrying out detailed instructions, maintaining attention and concentration for extended periods of time, and sustaining an ordinary routine without special supervision. (*Id.* at 84-86.) Dr. Downs further opined that Plaintiff "can carry out simple instructions, perform within a schedule, and make simple work related decisions." (*Id.* at 86.) On December 28, 2010, Dr. Fair upon reconsideration opined that "after a complete review of the file, the [Plaintiff] is able to perform simple, repetitive work." (*Id.* at 94.)

The ALJ found that Plaintiff could perform work with certain restrictions, including that Plaintiff is limited to performing "simple, repetitive, unskilled tasks." (*Id.*

- 12 -

at 20.) However, the ALJ did not incorporate any specific additional restrictions regarding concentration, persistence, or pace into the assessed RFC.

The Court finds that the ALJ properly incorporated the limitations opined by Dr. Bliken and Dr. Garreton into the RFC. The ALJ failed, however, to incorporate the limitations regarding concentration, persistence, and pace as opined by Dr. Rabara, or to explain the ALJ's treatment of Dr. Rabara's opinions. Nor was the ALJ's reference to "simple, repetitive, unskilled tasks" sufficient to encompass such restrictions. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 SSR LEXIS 20; *see also* 20 C.F.R. § 404.1568 ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."). The ability to meet the mental demands to perform unskilled "simple tasks" may be limited by "concentration, persistence, or pace" if an individual cannot complete simple tasks "at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions." 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00(C)(3).

As stated above, in her decision, the ALJ gave "significant weight" to the opinions of Dr. Rabara. However, the ALJ did not address whether Plaintiff could perform "simple, repetitive, unskilled tasks" despite her functional limitations in concentration, persistence, or pace found by Dr. Rabara. Further, the ALJ's reliance on the State agency reviewers does not resolve the issue. Although state agency psychologist Dr. Downs opined that Plaintiff can complete simple, repetitive work, even with moderate limitations in certain categories related to concentration, persistence, and pace, the ALJ failed to address that Dr. Rabara opined a more restrictive functional limitation in Plaintiff's ability to sustain an ordinary routine without special supervision. (*Id.* at 336.) Although these opinions may be reconciled, the ALJ failed to adequately address them in assessing Plaintiff's RFC.

1 Defendant argues that the ALJ "reasonably" incorporated the opinions of Dr. Rabara into the assessed RFC. (Doc. 17 at 15.) Specifically, Defendant asserts that "consistent with the opinions of Dr. Down[s], Dr. Fair, and Dr. Rabara, the ALJ found that Plaintiff should be limited to simple, repetitive, unskilled work." (*Id.*) However, Defendant overstates Dr. Rabara's opinions. Although Dr. Rabara opined that Plaintiff could carry out simple instructions, Dr. Rabara found "moderate" or "moderate to severe" restrictions in several other areas related to concentration, persistence, or pace and did not specifically opine that Plaintiff can perform simple, unskilled, repetitive work. Further, as stated above, Dr. Rabara opined at least one restriction in concentration, persistence, and pace potentially greater than those identified by Dr. Downs. The ALJ failed to address these opinions or provide any explanation for how the ALJ incorporated each of them into the RFC.

Additionally, even if the ALJ's RFC implicitly reconciled Dr. Rabara's and the state agency physicians' opinions, the ALJ erred in failing to incorporate any additional limitation for concentration, persistence, and pace into the RFC based on the ALJ's finding that Plaintiff has moderate difficulties in concentration persistence and pace.

In unpublished opinions, the Ninth Circuit Court has held that when an ALJ finds a moderate limitation in concentration, persistence, or pace, the ALJ must include that limitation in the claimant's RFC. *See Betts v. Colvin*, 531 Fed. Appx. 799, 800 (9th Cir. 2013) (holding that the ALJ erred in disregarding aspects of an examining physician's opinions, to which the ALJ gave the "greatest weight," without providing any explanation, and the ALJ's finding regarding the plaintiff's RFC therefore failed to take into account certain limitations identified by the examining physician); *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 Fed. App'x 709, 712 (9th Cir. 2013) (finding that the ALJ limiting a claimant to one to three step tasks did not capture the ALJ's finding that the claimant had moderate limitations in concentration, persistence or pace deficiency); *Brink v. Comm'r of Soc. Sec. Admin.*, 343 Fed. Appx. 211, 212-13 (9th Cir. 2013) ("[T]he ALJ's initial hypothetical question to the vocational expert referenced only 'simple,

1  repetitive work,' without including limitations on concentration, persistence or pace. This
2  was error."); *Williamson v. Comm'r Soc. Sec.*, 438 Fed. App'x 609, 611 (9th Cir. 2011)
3  ("[T]he ALJ erred by not considering Williamson's concentration, pace, and persistence
4  limitations—as attested to by Brending and Dr. Eckstein—in making a residual
5  functional capacity ('RFC') assessment and in questioning the vocational expert
6  ('VE').").

7  Additionally, this Court has issued opinions consistent with these Ninth Circuit
8  cases. *See Perkins v. Colvin*, CV-13-1817-PHX-BSB, 2014 U.S. Dist. LEXIS 125738,
9  *13-14 (D. Ariz. Sept. 9, 2014; *Cornelius v. Colvin*, No. 13-0535-PHX-SPL, 2014 U.S.
10 Dist. LEXIS 132597, *3 (D. Ariz. Sept. 22, 2014; *Wendte v. Colvin*, No. 12-1523-PHX-
11 GMS, 2013 U.S. Dist. LEXIS 76080, at 18-22  (D. Ariz. May 30, 2013) ("[t]he ALJ's
12 assumption that difficulties with concentration, persistence, or pace are solved by limiting
13 the claimant to unskilled work was in error").  The Court finds these cases are of
14 significant persuasive value.[6]

15 The ALJ failed to incorporate Plaintiff's limitations in concentration, persistence,
16 and pace into the assessed RFC.  The ALJ further failed to explain how a restriction to
17 simple, unskilled, repetitive work accounted for the limitations in concentration,
18 persistence, or pace supported by the medical evidence on which the ALJ relied.  In
19 doing so, the ALJ erred. *See Craft v. Astrue*, 549 F.3d 668, 678 (7th Cir. 2008) (finding
20 that the ALJ failed to provide an "accurate and logical bridge" between the medical
21 testimony regarding mental limitations and the restriction to unskilled work); *See
22 Cavanaugh v. Colvin*, No. CV-13-1222, 2014 U.S. Dist. LEXIS 176782, at *6-8 (D. Ariz.
23 Nov. 26, 2014) (finding where "the ALJ relied upon Dr. Rohen's opinion but failed to
24 account for the doctor's finding that Cavanaugh's work capacities would be impacted by
25 her speed of processing and stamina/fatigue, "the ALJ's determination was not consistent

---

[6] The Court also notes that the Commissioner has conceded in at least one case in this Court that it was error for an ALJ to find that a claimant had moderate limitations in concentration, persistence, or pace, but then to limit her to unskilled work without including detailed functional limitations. *Pronovost v. Astrue*, No. CV-12-1168-PHX-FJM, 2013 U.S. Dist. LEXIS 36191, *1 (D. Ariz. Mar. 15, 2013).

- 15 -

with the medical testimony.").

### ii. Vocational Expert Testimony

In determining that Plaintiff is able to complete past work at step four, the ALJ relied on vocational expert testimony. An ALJ must include all restrictions in the hypothetical question posed to the vocational expert, including moderate limitations in concentration, persistence, or pace. 20 C.F.R. §§ 404.1545; *Magallanes*, 881 F.2d at 756; *Wendte*, 2013 U.S. Dist. LEXIS 76080, at 18-22 ("[t]he Ninth Circuit requires vocational expert testimony to incorporate any 'concentration, persistence, and pace' deficiencies); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (a hypothetical that fails to take into account a claimant's limitations is defective).

The ALJ posed one hypothetical to the vocational expert:

> Q: Okay. I'm going to ask you to consider a hypothetical person the same age, education and work history as Ms. Lara. This hypothetical person could never climb ladders, ropes or scaffolds; can only occasionally balance. This person needs to avoid all exposure to hazards such as unprotected heights, dangerous, moving machinery or driving at work. This person is also restricted to performing simple work tasks and work that is repetitive.
>
> With these limitations, can this hypothetical person perform the past work?
>
> A. I believe so. I believe it's compatible with past work.

(AR 68-70.)

Plaintiff argues that the ALJ's hypothetical did not encompass all of the medical restrictions supported by the record, including pace limitations opined by Dr. Rabara, and, therefore, was insufficient to support the ALJ's determination that Plaintiff can

- 16 -

perform past work.[7] (Doc. 16 at 10.) Defendant cites to the Ninth Circuit Court's decision in *Stubbs-Danielson*, 539 F.3d 1169 (9th Cir. 2008), and argues that the ALJ did not error in failing to pose a hypothetical that encompasses restrictions in concentration, persistence, and pace because the test scores cited by Plaintiff do not describe specific functional abilities. (Doc. 17 at 17.)

The Court finds that the ALJ's hypothetical to the vocational expert did not account for all of Plaintiff's limitations. The facts here are distinct from those in *Stubb-Danielson* in important ways. First, in *Stubbs-Danielson*, the ALJ did not make an explicit finding that the plaintiff had pace limitations. 539 F.3d at 1173-74. Rather, the ALJ relied on one doctor who acknowledged the plaintiff had pace deficiencies but opined that the plaintiff could perform unskilled work anyway, and another doctor's opinions that Plaintiff was "not significantly limited" in her ability to "maintain attention and concentration for extended periods" and "sustain an ordinary routine without special supervision." *Id.* The Court specifically noted that the two doctors' opinions were consistent.

However, in contrast, while Dr. Downs opined that Plaintiff could complete simple, unskilled work despite moderate limitations in pace, Dr. Rabara opined that Plaintiff had "moderate" limitations in sustaining her concentration and completing a normal workday at a consistent pace, as well as "moderate to severe" limitations in sustaining an ordinary routine without special supervision. (*Id.* at 336.) Thus, at least some of the medical opinions adopted by the ALJ suggest that Plaintiff's deficiencies in concentration, persistence, or pace limit her ability to carry out work tasks on a continued

---

[7] Plaintiff also appears to argue that the ALJ erred in failing to include in the hypothetical restrictions due to "leg elevation" as opined by Dr. Matlin. (Doc. 16 at 10.) The ALJ gave "considerable weight" to Dr. Matlin's opinions, but found that Plaintiff's medical records do not fully support them. (AR at 24.) However, Plaintiff does not argue that the ALJ erred in the weight she gave to Dr. Matlin's opinions and Plaintiff fails to address what specific functional limitations the ALJ should have included in her hypothetical to the vocational expert based on those opinions. The ALJ need not incorporate into the RFC functional limitations that she found do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Therefore, the Court finds that the ALJ did not err in failing to incorporate Dr. Matlin's opinions in the hypothetical posed to the vocational expert.

- 17 -

basis regardless of the nature or complexity of the work to be performed. *See Brink*, 343 Fed. Appx. at 212-13 ("The medical testimony in *Stubbs-Danielson* . . . did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace. *Stubbs-Danielson*, therefore, is inapposite."); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (generally, "employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace").

Because the ALJ failed to direct the vocational expert to the totality of Plaintiff's limitations, the expert's testimony had "no evidentiary value to support a finding that [Plaintiff] can perform" her past work. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). Having relied on the vocational expert's opinion, the ALJ's finding that Plaintiff was not disabled was not based on substantial evidence.

**IV. Remand for further proceedings is appropriate here.**

Having determined that the ALJ erred, the Court must vacate the Commissioner's decision. The remaining issue for the Court is whether to remand this matter for an award of benefits or for further proceedings. Such a determination is within the Court's discretion. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).[8]

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted); *see also Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1101 (9th Cir.

---

[8] Plaintiff also alleges that the ALJ erred in evaluating Plaintiff's symptom testimony and lay witness statements, and the Defendant erred in failing to consider new evidence submitted by Plaintiff after the ALJ's decision. (Doc. 16 at 11-19.) Because the Court has found that the ALJ erred in assessing Plaintiff's RFC, and because, as discussed below, the Court will remand this matter for further proceedings and a new decision, the Court declines to specifically address Plaintiff's other arguments. On remand, the ALJ will have the opportunity to evaluate all of the evidence and reassess Plaintiff's entitlement to benefits at steps three through five of the evaluation process.

1 2014) (noting that a remand for further administrative proceedings is generally useful
2 where the record has not been fully developed, there are outstanding conflicts and
3 ambiguities to be resolved, or the presentation of further evidence may "prove
4 enlightening."). The Court applies the credit-as-true rule to determine that a claimant is
5 disabled and entitled to an award of benefits only if there are no "outstanding issues [in
6 the record] that must be resolved" and "it is clear from the record that the ALJ would be
7 required to find the claimant disabled were [the improperly rejected] evidence credited."
8 *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). However, a "claimant is not
9 entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter
10 how egregious the ALJ's errors may be." *Strauss v. Comm'r, Soc. Sec. Admin.*, 635 F.3d
11 1135, 1138 (9th Cir. 2011).

12 Here, the Court finds that the record contains outstanding issues and evidentiary
13 conflicts that make a remand for an award of benefits inappropriate. Further, even if
14 medical opinion evidence or Plaintiff's testimony were credited as true, it is not clear that
15 the ALJ would be required to find Plaintiff disabled on remand because the vocational
16 expert only testified regarding Plaintiff's ability to perform past work. (AR 67-70.) The
17 Court will therefore remand this case for further proceedings and a new decision. On
18 remand, in addition to reevaluating the evidence and taking new testimony, the ALJ
19 should accept any additional medical evidence into the record that exists for the period at
20 issue.

21 Accordingly,

22 **IT IS ORDERED** that the Commissioner's decision is vacated and this matter is
23 remanded to the Commissioner for further proceedings consistent with this Order.

24 ///
25 ///
26 ///
27 ///
28 ///

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and terminate this matter.

Dated this 31st day of March, 2015.

_____
Honorable John Z. Boyle
United States Magistrate Judge